315 So.2d 660 (1975)
MORENO'S, INC.
v.
LAKE CHARLES CATHOLIC HIGH SCHOOLS, INC., et al.
No. 55688.
Supreme Court of Louisiana.
June 23, 1975.
*661 Russell T. Tritico Lake Charles, for defendant-applicant.
Allen L. Smith, Jr., Plauche, Smith & Hebert, Lake Charles (Attorney for the Trane Co.), for defendant-respondent.
SUMMERS, Justice.
Plaintiff, Lake Charles Catholic High Schools, Inc., entered into a contract with Bartley, Inc., a general contractor, for the construction of an addition to St. Louis High School in Lake Charles. Bartley subcontracted with Moreno's, Inc., to furnish and install two air conditioning units in accordance with the plans and specifications calling for "top of the line" units to be warranted for one year. Moreno purchased the units from the Trane Company and installed them with this understanding.
In March 1972, approximately 2½ years after the units were placed in operation, the compressor failed on one of the units because of a malfunctioning internal mechanical part, which in turn led to the breakdown of other working parts within the compressor. Breakdown inspection revealed that at least four of the six pistons and connecting parts and at least six suction valves of the compressor were broken. After the compressor was replaced, the school refused to pay for the replacement compressor or its installation. Moreno's then instituted suit against the school demanding $7,487.55, the cost of replacing the compressor.
The school answered and filed a "third party demand" against The Trane Company, manufacturer of the unit, contending that the school should be indemnified on the basis of an "implied warranty of workmanship and materials on the part of the manufacturer."
Judgment in the trial court was in favor of Moreno's, and the school's third party demand against The Trane Company was rejected. On appeal to the Third Circuit, the judgment was affirmed. 302 So.2d 724. The school's application to this Court for review of the judgments rejecting its third party demand was granted.
*662 The unit on which the compressor failed was put in use in August 1969 before construction of the school building was completed, but the one-year warranty stipulated in the contract between the school and the contractor did not begin to run until the entire project was accepted on April 7, 1970. The compressor failed about eighteen months later on March 2, 1972. Prior to that time numerous service calls by Moreno's were required to maintain the unit in operating condition.
The unit involved is a Model "E" compressor which, according to the manufacturer, is designed to operate under normal conditions for at least 20,000 hours (about ten years) without failure. To function for this period of time, it was necessary that the compressor be properly manufactured, assembled, installed and maintained.
Evidence in the record established that there was no fault in the installation or maintenance of the compressor or its components. The school contends, therefore, that the failure was necessarily due to a defect in the manufacture and assembly of the compressor or its components by Trane. Such a result is supported, the school asserts, by the testimony that it was "unreal for a unit of this type to fail in the length of time that it had been in service."
According to the Trane sales engineer who testified, a consumer could expect the unit to last the design life of 20,000 hours. However, he explained, a certain percentage of these units failed and "this just happened to be one." These failures, he explained, were to be expected in a mechanical device.
In a redhibitory action, the plaintiff need only prove that the product contained a hidden vice at the time of the sale, not apparent by ordinary inspection, which subsequently renders the thing unfit for the use intended or that its use became so inconvenient or imperfect that it must be supposed that the purchaser would never have purchased the product had he known of the vice or defect. La. Civil Code arts. 2541-44; Prince v. Paretti Pontiac Co., Inc., 281 So.2d 112 (La.1973); Rey v. Cuccia, La., 298 So.2d 840. When the redhibitory action is against the manufacturer who is not the immediate seller, proof need only be made that the defect complained of was a defect in the manufacture of the product.
The burden of proof may, as in cases generally, be discharged by proving the existence of defects at the time of the sale by direct or circumstantial evidence. Rey v. Cuccia, supra. It is not required that plaintiff negate all other possible causes in order to support his claim. If the proof be by circumstantial evidence it need only exclude other reasonable hypotheses with a fair amount of certainty. Taken as a whole the proof of the fact should be more probable than not. See Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971) and cases cited there.
As this Court has recognized for more than fifty years:
"It is not incumbent upon the buyer to seek out, allege, and prove the particular and underlying cause of the defect which makes the thing sold unfit for the purpose intended, particularly when the thing is a complicated piece of machinery; but it suffices if he alleges and afterwards proves as a fact that such defects exist." Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871 (1924).
In this case the proof suffices that there was a defect in the manufacture of the compressor and its components. The evidence supports a finding that there was no fault in the installation and maintenance of the compressor and its components. By the testimony of Trane's representatives it is represented that this compressor was designed to work satisfactorily for ten years, absent the exceptional case *663 where mechanical failure results from indeterminate causes. Failure of the compressor, then, by clear implication, was due to mechanical failure, which in the absence of proof of other causes, would more properly be attributed to faulty manufacture.
When a compressor designed to work satisfactorily for ten years fails in 2½ years, an inference may logically be drawn under these circumstances that a fault exists in its manufacture. Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964). We are satisfied from the facts in this record that plaintiff has discharged the burden of proving by circumstantial evidence, and logical inferences from established facts, that a defect existed in the manufacture of the compressor at the time of its installation.
There is no merit in Trane's contention that the one-year warranty agreed to by Moreno's with the school exonerates them from any obligation to the school for failure of the compressor after the expiration of that limited warranty. This result does not follow. This suit is the assertion of a claim by the school against the manufacturer based upon an implied warranty owed by the manufacturer by virtue of the sale to Moreno's, a right to which the school is subrogated by law. La. Civil Code art. 2503.
As a general proposition, "The seller is bound by two principal obligations, that of delivering and that of warranting the thing which he sells." La. Civil Code art. 2475. This obligation of warranty is implicit in every sale unless expressly restricted or limited by the seller. La. Civil Code arts. 2474 and 2503. No showing has been made by Trane that they imposed restrictions on this generally implied warranty. Although the school's action against Moreno's may be limited by the restricted warranty between Moreno's and the school, there is no showing that Trane is entitled to the benefit of this limitation insofar as the claim asserted by the school is concerned.
And there is no merit to Trane's plea of prescription of one year. The compressor failed in March 1972, and suit was instituted in June 1972 by Moreno's against the school. The school asserted its third party claim against Trane in September 1972 in that same suit. Less than one year tolled, therefore, from the date of discovery of the defect or the incurring of damage.
La. Civil Code art. 2534 provides in part,
"The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.
"This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser. * * *"
La. Civil Code art. 2545 speaks also of the seller who knows of the vice of the thing he sells, and for such a seller La. Civil Code art. 2546 provides,
"* * * the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice."
La. Civil Code art. 2531 provides that if a seller is liable because of redhibitory defects he has a corresponding and similar right of action against the manufacturer. The third-party plaintiff has a direct right of action against the manufacturer under the seller's accessory right of action, having proved that a vice existed in the manufacturing of the compressor.
While this Court has so far said that sellers must actually know of the redhibitory vice to delay commencement of prescription until one year after discovery of the defect, we have long held that the manufacturer is conclusively presumed to have knowledge of even latent defects. In Templeman Bros. Lumber Co. v. Fairbanks, Morse & Co., 129 La. 983, 57 So. *664 309 (1912), the Court held that for a manufacturer the one year prescription for the action in redhibition does not begin to run until the discovery of the vice. The Court said:
"* * * And the defendant (manufacturer) must also be held to have known that the engine had been defectively installed. It was its duty to know it, and it had full opportunity to know it. It must, therefore, be presumed to have known it. * * *"
See also, Tuminello et ux. v. Mawby et al., 220 La. 733, 57 So.2d 666 (1952); George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432 (1905); Doyle v. Fuerst & Kraemer Ltd., 129 La. 838, 56 So.2d 906, 40 L.R.A. (n.s.) 480 (1911).
Doyle v. Fuerst & Kraemer, Ltd., supra, cites Pothier, Vente, ¶214 and Dalloz, Codes Annotes, art. 1645, Nos. 15 and 16, and Baudry-Lacantinerie & Saignat, Vente No. 436. Basically the French hold that the fabricator, the manufacturer and the artisan should know of the defects, since the thing sold is of his own production. It has, therefore, been clearly established in Louisiana law that a manufacturer is presumed to know of the defect in the thing he has produced, and therefore the prescription provided for in Article 2546 applies to the manufacturer.
It is clear, therefore, that the school's claim was timely, having been filed in less than one year from the discovery of the defect in the manufacture of the compressor.
For the reasons assigned, the judgments of the courts below are reversed and set aside, and there is judgment in favor of plaintiff, Lake Charles Catholic High Schools, Inc., and against The Trane Company in the sum of $7,487.55 with legal interest from judicial demand and for all costs.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
The school does not contest that portion of the judgment declaring its liability to Moreno's for the price of the replacement compressor. It is also undisputed that the one-year express warranty against defects given by the manufacturer, general contractor, and Moreno's, which commenced on the date of formal acceptance of the project, had expired before the compressor "scrambled."[1] Hence, the sole issue presented here for consideration concerns the correctness of the ruling of the court of appeal denying third party indemnification of the school by Trane on the basis of its implied warranty of fitness imposed by the Civil Code. More specifically, the question here is whether the school has proven that the original compressor, which was manufactured by Trane and sold to Moreno's for installation at the jobsite pursuant to the terms of the building contract, contained a defect that either rendered it unfit for use in the manner intended or sufficiently diminished its value to warrant a reduction in the price ultimately paid by the school for the thing sold, which was the entire construction. If such a defect is proven, the difference between actual value and price paid must be restored to the school by Trane.

I.
In Louisiana, a seller is bound to two principal obligations: that of delivering and that of warranting the object sold.[2] *665 The latter obligation of warranty is two fold. First, the seller warrants that the buyer will not be deprived of his possession of the thing sold by the rights or claims of third persons.[3] Second, the seller warrants that the thing sold is free from hidden defects, or redhibitory vices, that render it unfit for the use intended.[4]
Where the buyer discovers a hidden vice or defect in the thing sold, he has two options. First, he may bring an actio redhibitoria, or action in redhibition, for avoidance, or rescission, of the sale on the ground that the defect is of such severity that the object is rendered totally unfit for its intended use.[5] The buyer must prove that the vice existed before the sale was made to him.[6] A seller in good faith, i.e., one who was unaware of the defect in the thing sold, is bound only to repair the vice or, failing that, to restore the price, any expenses occasioned by the sale, and any expenses incurred in the preservation of the object by the buyer.[7] The bad faith seller, i.e., one who knew of the defect and neglected to declare it, is held responsible for any damages suffered by the buyer as a result of the defect as well.[8] A manufacturer may be sued as a seller by the ultimate buyer without privity and is presumed to know of the defect in the thing made by him.[9] The action in redhibition must be brought against a good faith seller within one year from the date of sale.[10] If the seller is in bad faith, prescription does not commence to run until the defect is discovered; accordingly, the action must be brought within one year from discovery of the defect by the buyer.[11]
The second option available to the buyer is the actio quanti minoris, or action for reduction of the price.[12] This action permits the buyer to retain the thing sold and obtain a refund of part of the purchase price in proportion to the reduction in the value of the thing caused by the vice or defect. A buyer bringing a suit in redhibition who fails to prove that the defect is of such severity to warrant a rescission of the sale may be granted, in the discretion of the court, a reduction in the price; however, he who demands merely a reduction in price may not thereafter maintain the redhibitory action.[13] The action for a reduction of price is subject to the same rules and limitations as the redhibitory action.[14]

II.
Here, the third party petition of the school against Trane presents no demand for rescission of the original sale of the entire construction under the building contract; *666 rather, the school seeks, in essence, a reduction in the sale price by the amount that the school was required to pay to replace a defective component of the construction, i.e., the compressor. Although the manufacturer is not the immediate seller to the school, it may be held to the same responsibility as a seller under our law. Accordingly, the school seeks recovery frm Trane, the manufacturer of the compressor, in the form of indemnity for the diminished value of the thing sold, which is represented by the costs it incurred replacing the allegedly defective compressor.
In seeking a reduction of the price on account of a defect in the thing sold that diminishes its value, the buyer may prove the existence of the defect not only by direct evidence of eyewitnesses, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of sale.[15] Proof by direct or circumstantial evidence is sufficient to constitute a preponderance of the evidence (which is the burden of proof under which the buyer labors) when, taking the evidence as a whole, such proof shows the fact or causation sought to be proved is more probable than not.[16]
Evaluating the record in this manner, I agree with the findings made by the courts below that the buyer (the school) has failed to prove that the defect was more probably than not one of manufacture that existed prior to or at the time of sale. The school bore that burden of proving the existence of the defect before the sale. It failed to offer any expert testimony affirmatively ascribing the cause of the failure to a defect in materials or workmanship in manufacture.
However, the school contends that it circumstantially met its burden by proof by deduction, i.e., by eliminating all other possible causes of the breakdown save that of improper manufacture. I disagree. Expert testimony indicated that the immediate cause of the breakdown, the "slugging" of liquid, could have resulted from four possible causes: improper operation and/or installation, improper maintenance, improper manufacture, or force majeure (e.g., power failure). The circumstantial evidence offered by the school that the breakdown did not result from three of the four possible sources of trouble was weak and unconvincing. It was couched in vague and general terms and consisted primarily of the testimony of local air conditioning contractors who, from their cursory examination of the scrambled compressor, testified that they were unable to ascribe the cause of the scramble to any of these three causes. No serious attempt was made by plaintiff to offer any positive evidence that would eliminate these three possible causes with any legal certainty.[17] Moreover, the fact that the alleged defect did not manifest itself for some two and a half years after the unit was placed in operation tends to negate any inference that the defect might have existed at the time of the sale. Just as insufficient expert testing of the compressor rendered it impossible to attribute the failure of the compressor to a defect in manufacture, the witnesses likewise failed to establish the defect in the manufacture by adequately eliminating the other possible causes. Accordingly, in my opinion, plaintiff has failed to prove a redhibitory defect existed at the time of the sale of the compressor either by direct or circumstantial evidence.

III.
The majority disagrees, holding that "[w]hen a compressor designed to work *667 satisfactorily for ten years fails in 2½ years, an inference may logically be drawn that a fault exists in manufacture." This rule is contrary both to the law as I understand it and to the evidence disclosed in the record.
Article 2529 of the Civil Code provides that a declaration made in good faith by the seller that the thing sold has some quality that is found not to have gives rise to a redhibition only if the quality was the principal motive for making the purchase. There is no evidence that the design life of the unit is a quality that was the "principal motive" of the school authorities for purchasing that particular brand of air conditioning. The architect employed by the school specified "top of the line" equipment; all the experts who testified agreed that Trane manufactured "top of the line" air conditioning units. The record discloses no evidence that the choice of Trane equipment was made in reliance of its declaration that the equipment would perform for 20,000 hours. In my view, the rule announced by the majority is in direct conflict with article 2529 by relieving the buyer of the burden of proving that the quality that he complains the thing sold lacks was the principal motive for his purchase.
Additionally, there is no factual basis here to declare that, when a unit fails to perform for its intended design life, " . . .an inference may logically be drawn . . . that a fault exists in its manufacture." No expert witness in this case was willing to make such a declaration. As noted above, their testimony established three possible causes of the breakdown other than a defect in manufacture.
In sum, the rule announced here contravenes the well-ordered requirements of proof in redhibitory actions set forth in the Civil Code. Moreover, it is unjustified in view of the evidence. In my view, the demands of the school should be rejected. For these reasons, I respectfully dissent.
NOTES
[1] The term "scrambled" is a technical term used in the air conditioning and refrigeration industry to describe the appearance of the interior of a compressor that contains severely damaged parts.
[2] La.Civil Code art. 2475 (1870). For an excellent discussion of the law on the subject in both Louisiana and France see Barham, Redhibition: A Comparative Comment, 49 Tul.L.Rev. 376 (1975) [hereinafter cited as Barham].
[3] La.Civil Code arts. 2476, 2500 (1870).
[4] Id. arts. 2476. 2520.
[5] Id. arts. 2520-40.
[6] Id. art. 2530.
[7] Id. art. 2531.
[8] Id. art. 2545.
[9] Rey v. Cuccia, 298 So.2d 840 (La.1974); Radalec, Inc. v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830 (1955); Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952); George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432 (1905). There is some confusion over the appropriate civil law theory by which the "privity of contract" requirement has been eliminated to allow direct suit by the buyer against the manufacturer, especially in view of a recent French decision to the contrary. For a discussion see Barham, supra note 1, at 379-84. See Spouses Nicholas v. Miran, (1974) D.S.Jur. 138 (Cass. civ. com.), translated at 49 Tul.L.Rev. 372 (1975).
[10] La.Civil Code art. 2534 (1870).
[11] Id. art. 2546.
[12] Louisiana Civil Code article 2541 provides:

Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price.
See also id. art. 2542.
[13] Id. art. 2543.
[14] Id. art. 2544. See text accompanying notes 7-13 supra.
[15] See Rey v. Cuccia, 298 So.2d 840, 843 (La.1974) and authorities cited therein.
[16] E.g., Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
[17] For example, the record reflects that the school had no maintenance contract on the equipment.